## JOHN C. MOORE v. WILLIAM J. DAVEY, RICHARD OWENS, AND GEORGE H. ESTES.

SPANISH AND MEXICAN LAW OF REGISTRATION OF MORTGAGES.—By the Spanish and Mexican law prevailing in this territory at date of the treaty of Guadalupe Hidalgo, and still in force except so far as repealed by statute, a mortgage was inoperative upon the property unless recorded in the mortgage office of the judicial district in which the property was situated, and the mortgage was required to be presented to the register for inscription within six days, if executed in the town where it was to be registered, and within one month if executed elsewhere, and to be registered in twenty-four hours after such presentation.

MORTGAGE TO BE REGISTERED, WHERE.—Under the act of January 12, 1852, a mortgage is not valid except between the parties interested, or as to those having actual notice of it, until it shall be deposited for registration with the clerk of the county where it was executed.

IDEM—EFFECT OF NON-REGISTRATION.—A mortgage executed in one county, of land lying in another, and never deposited with the clerk of the former county for registration, but recorded in the latter in eleven days after execution, must be postponed to a judgment recovered in the former county two days after the mortgage was made, execution upon which was immediately issued and levied upon the land, the judgment creditor having no notice of the mortgage, where the levy is kept alive and the land sold thereunder to the judgment creditor; and the latter's title can not be affected by a subsequent foreclosure.

APPEAL from the district court for Rio Arriba county. The opinion states the case.

*M. Ashurst*, for the appellant.

*Smith and Tompkins*, for the appellee.

By Court, BENEDICT, C. J.:

In the district court, Moore filed his bill to foreclose a mortgage against Davey. In the course of the proceedings, Davey filed his plea, setting forth that Richard Owens and George H. Estes had obtained a judgment against him in the district court for a large amount of money, prior to the execution of the mortgage, and that by virtue of execution in pursuance thereof, they had become the purchasers of the identical lands mentioned in the mortgage; that being interested in the premises, they had not been made parties defendant in the bill. The plaintiff demurred, but his demurrer was overruled by the court. Afterwards Owens and Estes were admitted as defendants, and filed voluntarily their answer to the bill.

It appears that the mortgage was executed on the twenty-third day of June, 1853, in the county of Santa Fe, and recorded in the county of Rio Arriba, where the land lay, the second of July following. Two judgments are set forth in the complaint—one rendered in the district court of Santa Fe county on the twenty-third of June, 1853, for one thousand seven hundred and seventy dollars, and the other on the twenty-fifth of the same month, in the same county, for seven hundred and sixty-one dollars and twenty-four cents. The answers set forth, in substance, that executions were immediately issued in proper form, and levied, and the levy kept alive until the lands were sold and purchased by Owens and Estee. At the April term of the district court, 1857, a decree was rendered against Davey for the amount due upon the mortgage, and if the decree should not be paid within sixty days, the lands included in the mortgage against which a decree of foreclosure was made, should be sold; and that Owens and Estes should deliver possession of the premises to the purchaser within sixty days after the sale. From the decree they appealed. It is insisted in this court that the appellants, by their judgments, executions, and levy, acquired a lien upon the lands prior to the mortgage; that they never lost it; that they were rightfully in possession of the premises under their judgment, lien, levy, and purchase, and that therefore the court erred in disregarding

their rights in the decree of foreclosure, and also in its decree that they should deliver up the possession of the lands to the purchaser under the decree.

From the silence of our statutes at the time the mortgage in question was made, as to its qualities and the legal consequences which followed its execution, we are to turn for information and authority to the Spanish and Mexican law, as it stood at the time of the treaty of Guadalupe Hidalgo. In view of that law (still in force where not repealed or modified), this was a conventional mortgage, or one executed by the mutual agreement of the parties, and in writing, and in which the property mortgaged, the terms and conditions were duly set forth. Such "mortgage, in order to have effect, must be registered in the mortgage office. If this be not done, the mortgage is inoperative:" Schmidt, Civil Law of Spain and Mexico, 8. The mortgage "attaches to the mortgaged property, and follows it until released, into whatever hands it may fall:" Id. "The person in whose favor the mortgage is given has the right to seize the property for the satisfaction of his debt or claim, in whatever hands said property may be found." For "this purpose he may resort to executory proceedings," etc.: Id. 183. "Every contract creating a mortgage must be registered in the mortgage office of the judicial district where the mortgaged property is situated." If such registration "is not made, the property is not considered mortgaged, and the contract is only personal."

These extracts show the benefits as getting security in the property, which results to the mortgagee by the mortgage, but to have "effect it must be registered, otherwise it is inoperative." "The property is not considered mortgaged." The contract is only personal. The registration had to be, too, at the place pointed out. Also the mortgage had to be presented to the register for inscription within six days after the execution of the contract, if made in the same town where the registry was to be made, and within one month if made elsewhere; and it had to be registered within twenty-four hours from the time of presentation.

We will now examine some of the provisions of the terri-

torial statutes entitled "Conveyances." The Revised Code, page 194, section 14, defines where conveyances shall be registered, since that act went into effect. In this respect it changed the rule before quoted. " All writings conveying real estate, or by which real estate may be affected in law or equity, which shall be signed, acknowledged, and certified in the manner herein prescribed, shall be registered in the office of the archives of the county wherein said conveyance is made.

" All persons making said instruments of conveyance after they shall be signed, certified, and registered, in the manner above described, shall give notice of the time of its being registered in the office of the register, to all persons mentioned in said conveyance, and all purchasers and mortgagors shall be considered in law and equity to have purchased under said notice."

" None of said writings shall be valid except to the parties interested and those who have actual notice of the same, until it shall be deposited in the office of the clerk to be registered."

The Spanish rules quoted, and the statutory provisions, will aid us in the determination of this case. Although he had his mortgage, still he did not obtain its execution until the next day after the first judgment in favor of Owens and Estes, and did not have it recorded (and there is no proof that it was ever recorded) until ten days subsequent to the said judgment, and not until the seventh day after the judgment of the twenty-fifth of June. Again, the registration was not made, and so far as this court knows, never has been, up to this date, made at the office, and within the county specified by law. The mortgage was made in the county of Santa Fe, and the act of twelfth of January, 1852, provided it should be registered in the office of the archives of the county where made. It was recorded in the county of Rio Arriba. The office of the clerk in the county of Santa Fe was the place where it should have been deposited, and the act is plain and explicit that it should not be valid except to the parties interested, and those who had actual notice of the mortgage

until it should be deposited with the proper clerk. The principle or rule contained in these sections as to the consequences of non-registration is but a re-enactment of the Spanish law upon the same subject.

The answer of Owens and Estes avers the immediate issue of execution upon the judgment, and before they had any actual notice of the execution of the mortgage, and that upon the same day or day following after the issue of the writs, they were levied upon the premises in question. Though these executions, or a part of them that followed the judgment, are offered as exhibits in the answer, they do not appear in the record, nor any proof explanatory of their absence or descriptive of their contents.

The answer was replied to, and such evidence of a documentary character as appears in the transcript is not so clear and satisfactory on some points as the defendants ought to be able to produce. We think, however, that enough appears in the record to establish Owens and Estes' lien in the premises in preference to the mortgage, and that the decree of foreclosure in disregard of their rights, and of expulsion from possession, was erroneous. They seem diligently to have pursued their remedy, and therefore, so far as their diligence has gained them legal advantages in good faith, they stand favored in court. "The law favors the diligent," is a maxim well known to every lawyer. If the complainant has lost his hold upon the property, so far as these defendants are concerned, he will take warning from it and guard with more legal vigilance his interests in the future.

It is the unanimous opinion of the court that the decree of the district court be, and hereby is, reversed, and that the cause be remanded to the district court to be proceeded in, in conformity with the general views of this opinion, and that upon additional proofs upon a rehearing, the court will protect in its decree such equities as the case shall disclose as accruing to any of the parties upon the record. And it being made known to the court here that Richard Owens is now deceased, the district court will admit his administrator a party representative in the suit.

Reversed and remanded.